**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION**

| | | |
|---|---|---|
| **LINDA TRAVIS,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 2:17-cv-00163-D-BP** |
| | § | |
| **NANCY A. BERRYHILL,** | § | |
| **Deputy Commissioner for Operations,** | § | |
| **Social Security Administration,** | § | |
| | § | |
| **Defendant.** | § | |

## <u>MEMORANDUM AND OPINION</u>

Plaintiff Linda Travis ("Travis") filed this action under 42 U.S.C. § 405(g), seeking judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her application for disability insurance benefits under Title II of the Social Security Act ("SSA"). ECF No. 1. After considering the pleadings, briefs, and the administrative record, the undersigned **RECOMMENDS** that United States District Judge Sidney A. Fitzwater **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## I.    STATEMENT OF THE CASE

Travis filed her application for disability benefits on November 11, 2014, alleging a disability onset date of July 25, 2014. Transcript ("Tr.") 10, 122–23. The Commissioner initially denied her benefits on March 31, 2015, and denied her again upon reconsideration on June 17, 2015. Tr. 10, 37, 57. Travis requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held before ALJ Lantz McClain on May 2, 2016. Tr. 10, 21–36. Travis appeared in Amarillo, Texas, and the ALJ presided over the hearing from Tulsa, Oklahoma. *Id.* John R. Heard, an attorney, represented Travis at the hearing. *Id.* Vocational Expert Angharad B. Young testified

at the hearing. *Id.* The ALJ issued his decision on June 7, 2016, finding that Travis was not entitled to disability benefits. Tr. 16.

In his decision, the ALJ employed the statutory five-step analysis. At step one, he found that Travis had not engaged in substantial gainful activity since March 15, 2012, the alleged disability onset date. Tr. 12, Finding 2. At step two, the ALJ found that Travis had the medically determinable impairments of obesity, degenerative disk disease, history of colon cancer, hypothyroidism, hypertension, depression, and anxiety. Tr. 12, Finding 3. The ALJ then found that Travis did not have an impairment or combination of impairments that was severe. Tr. 12, Finding 4. The ALJ did not continue past step two and denied Travis's claim. *See* Tr. 16.

The Appeals Council denied Travis's request for review on July 5, 2017. Tr. 1–6. Therefore the ALJ's decision became the Commissioner's final decision and is properly before the Court for review. *See Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005) ("[T]he Commissioner's final decision includes the Appeals Council's denial of a request for review.").

## II.    FACTUAL BACKGROUND

Travis was born on July 22, 1954, and she was sixty-one years old at the time of the hearing. Tr. 24, 133. The highest grade of schooling she completed was high school. Tr. 25, 138. Travis had past work as a secretary. Tr. 33.

## III.    STANDARD OF REVIEW

Title II, 42 U.S.C. § 404 *et seq.* of the SSA controls the disability insurance program as well as numerous regulatory provisions concerning disability insurance. *See* 20 C.F.R. Pt. 404. The SSA defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999).

To determine whether a claimant is disabled and thus entitled to disability benefits, the Commissioner employs a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a)(4). For step one, the claimant must not be presently working at any substantial gainful activity to obtain disability benefits. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial gainful activity" means work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. § 404.1572; *Masterson v. Barnhart*, 309 F.3d 267, 271 n.2 (5th Cir. 2002). For step two, the claimant must have an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). For step three, disability exists if the impairment or combination of impairments meets or equals an impairment listed in the Listing of Impairments ("Listing") found in 20 C.F.R. Pt. 404, Subpt. P, App. 1. 20 C.F.R. § 404.1520(d). Before proceeding to step four, the Commissioner must assess the claimant's RFC—"the most the claimant can still do despite [her] physical and mental limitations." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); 20 C.F.R. § 416.945(a)(1). For step four, if the claimant's medical status alone does not constitute a disability, the impairment must prevent the claimant from returning to her past relevant work. 20 C.F.R. § 404.1520(e). For step five, the impairment must prevent the claimant from doing any work, considering the claimant's RFC, age, education, and past work experience. 20 C.F.R. § 404.1520(f); *Crowley v. Apfel*, 197 F.3d 194, 197–98 (5th Cir. 1999). "The claimant bears the burden of showing that she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007). "If the Commissioner meets this burden, the claimant must then

3

prove [she] in fact cannot perform the alternate work." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Crowley*, 197 F.3d at 198.)

The Court's decision is limited to a determination of whether the Commissioner applied the correct legal standards and whether substantial evidence in the record as a whole supports the decision. *Audler*, 501 F.3d at 447; *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). "Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)). The Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully scrutinize the record to determine if evidence is present. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Harris*, 209 F.3d at 417. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)).

## IV.    ANALYSIS

Travis raises two issues on appeal. First, she argues that the ALJ erred by failing to explain why Travis's treating physician's medical evaluation did not establish the presence of a severe impairment. Second, she argues that the ALJ erred when rejecting her mental impairments as severe.

**A.    The ALJ did not err in his finding that Travis's physical impairments were not severe, as he properly evaluated the evidence of record.**

At step two of the five-step process, the ALJ determines whether the claimant has an impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c); *see also Stone v. Heckler*, 752 F.2d 1099, 1100–03 (5th Cir. 1985). As defined in the Social Security Regulations

["Regulations"], a severe impairment is "any impairment or combination of impairments which significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Finding that a literal application of these regulations would be inconsistent with the Social Security Act, the Fifth Circuit has held that an impairment is not severe 'only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work.'" *Hall v. Astrue*, No. 3:11-CV-1929-BH, 2012 WL 4167637, at *9 (N.D. Tex. Sept. 20, 2012) (citing *Stone*, 752 F.2d at 1101, 1104–05). "An impairment is severe if it significantly limits an individual's physical or mental abilities to do basic work activities; it is not severe if it is a slight abnormality or combination of slight abnormalities that has no more than a minimal effect on the claimant's ability to do basic work activities." *Brunson v. Astrue*, 387 Fed. App'x 459, 461 (5th Cir. 2010); *Sinayi v. Astrue*, No. 3:11-CV-2770-D, 2012 WL 3234414, at *3 (N.D. Tex. Aug. 9, 2012) (Fitzwater, J.) (holding that this formulation of the standard is equivalent to the one set out in *Stone*).

The ALJ used the formulation from the Fifth Circuit's opinion in *Brunson* when stating and applying the step-two standard. Tr. 11–16. He found that there was an "absence of any clear indication of disabling limitation in the objective records" and the documentary evidence repeatedly shows there is "nothing remarkable in [Travis's] physical status." Tr. 15. As support, the ALJ cited a 2014 examination report and a May 4, 2015, medical opinion from Travis's treating physician, Dr. Mark Garnett ("Garnett"), that showed no significant limitations on Travis's ability to work. *Id.*; Tr. 329–30, 455–57.

The ALJ then considered and rejected a second opinion from Garnett, dated April 26, 2016, that showed greater limitations than Garnett's 2015 opinion. Tr. 15, 660–62. As the ALJ noted, the 2016 opinion reduced Travis's ability to stand at one time, but not her total ability to stand, as

well as her ability to climb stairs or ladders. *Id.* The ALJ stated there was no documentary support for this second opinion. Tr. 15. The ALJ therefore stated that he gave little or no weight to the 2016 opinion, given its "inconsistencies both within itself and with the preceding evidence." *Id*. The ALJ therefore concluded that Travis's physical impairments were not severe. Tr. 16.

Travis argues that Garnett's 2015 opinion satisfies the step-two severity standard and shows that her physical impairments are severe. ECF No. 16 at 13. Travis argues that the ALJ implicitly accepted the 2015 opinion in using it to rebut the 2016 opinion. *Id.* The limitations given in the 2015 opinion are: being able to twist and bend at the waist twenty-five percent of an eight-hour workday, needing to take three to four unscheduled breaks, being unable to lift fifty pounds safely, and  needing to be absent from work about twice a month. Tr. 455–57. In all other respects—sitting, standing, walking, reaching, postural, and environmental—the opinion states that there are no limitations. *Id.* Travis argues that these limitations show that she is incapable of the full range of light work, though she does not specify how. ECF No. 16 at 14. She argues that the 2015 opinion satisfies the step-two standard under *Stone*, and that therefore the ALJ should have continued past step two. *Id.* Travis does not argue that any medical evidence other than the 2015 opinion shows a severe physical impairment. *See id.*

In response, the Commissioner seems to argue that the ALJ rejected Garnett's 2015 opinion, which the ALJ plainly did not, as the 2015 opinion explicitly forms part of the basis for his finding that Travis had no severe physical impairment and for his rejection of Garnett's 2016 opinion. *See* ECF No. 17 at 2; Tr. 15. Beyond this argument, the Commissioner only reviews the evidence of record to show that substantial evidence supports the ALJ's decision. ECF No. 17 at 2–4. Neither party cites to case law with facts analogous to Travis's case to further explain how the *Stone* standard applies to her case.

The only medical opinion or evidence that supports more than a minimal effect on the claimant's ability to do basic work activities is Garnett's 2016 opinion. *Brunson*, 387 Fed. App'x at 461. The ALJ properly rejected that opinion based on other medical evidence from treating and examining physicians, including Garnett's own evidence. Tr. 15; *see also Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000) (holding that the ALJ may reject an opinion of a treating physician if there is contrary "reliable medical evidence from a treating or examining physician"). Contrary to Travis's argument, nothing in Garnett's 2015 opinion show that there are more than minimal effects on her ability to work or to do light work, which requires lifting twenty pounds and being able to do a "good deal of walking or standing" or sitting while pushing and pulling. 20 C.F.R. § 404.1567. Nor are there any other limitations that would have required the ALJ to make a finding of severity and continue past step two. Reversal is not warranted on this ground.

**B.      The ALJ erred by not giving weight to the mental evaluation from Travis's treating physician.**

At step two, an ALJ must also determine whether the claimant has a mental impairment or combination of impairments that is severe. 20 C.F.R. § 404.1520(c). "The opinion of the treating physician who is familiar with the claimant's impairments, treatments and responses, should be accorded great weight in determining disability." *Newton*, 209 F.3d at 455 (citing *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994)). "A treating physician's opinion on the nature and severity of a patient's impairment will be given controlling weight if it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with . . . other substantial evidence.'" *Newton*, 209 F.3d at 455 (citing *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995)). However, the ALJ has the sole responsibility for determining the claimant's disability status, and the ALJ may give less weight to a treating physician's opinion if the ALJ shows good cause for doing so. *Greenspan*, 38

F.3d at 237. "The good cause exceptions we have recognized include disregarding statements that are brief and conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence." *Id.* "The ALJ cannot reject a medical opinion without an explanation." *Loza v. Apfel*, 219 F.3d 378, 395 (5th Cir. 2000).

The ALJ's step-two determination concerning Travis's mental impairments relies entirely on Travis's own function report and the state agency medical consultant's evaluation when denying Travis benefits at the initial level. Tr. 15–16, 44–45, 160–67. The ALJ analyzed the severity of Travis's functioning according to the four functional areas of daily living activities; social functioning; concentration, persistence, and pace; and episodes of decompensation. Tr. 15–16; 20 C.F.R. § 404.1520a. He found that Travis had only mild limitations in the first three areas and no episodes of decompensation of extended duration. Tr. 15–16. The ALJ therefore found that Travis's mental impairments were not severe. Tr. 16.

Travis argues that the ALJ improperly omitted or gave no weight to her treating physician's opinion on her mental impairments, which constituted evidence that she did have a severe mental impairment. ECF No. 16 at 15–20. Garnett, her treating physician, filled out a medical opinion questionnaire on her mental impairments, noting that she had severe anxiety with a poor prognosis. Tr. 663. In response to an extensive questionnaire, Garnett responded that, among other limitations, Travis had poor or no ability to: understand and remember very short instructions, complete a normal workday and workweek without interruptions from psychologically based symptoms, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in a routine work setting, deal with normal work stress, and deal with stress of semiskilled and skilled work. Tr. 663–65. Garnett commented that Travis frequently has anxiety

with any change in structure or stress. Tr. 665. He also stated that her impairments would cause her to be absent from work more than twice a month. *Id.* The ALJ summarized Garnett's opinion at one point, but he did not state what weight he gave it, nor did he refer to it when determining the severity of Garnett's mental impairments. Tr. 14–16. Travis argues that the Fifth Circuit's opinion in *Newton* requires the ALJ to analyze Garnett's opinion according to the six factors set out in 20 C.F.R. § 404.1527. 209 F.3d at 456.

Travis additionally argues that the record supports a finding of a severe impairment of depression and supports Garnett's mental evaluation. ECF No. 16 at 16–17. A clinical mental evaluation diagnosed Travis with moderate persistent depressive disorder and an unspecified anxiety disorder. Tr. 453. The record contains a number of instances, both self-reported and observed, of symptoms related to depression and anxiety, such as panic attacks, agitation, insomnia, and tearfulness. Tr. 223, 229, 233, 405, 410, 450, 469, 546, 551.

The Commissioner concedes that Garnett was Travis's treating physician but argues that the ALJ properly gave no weight to Garnett's mental impairment opinion. ECF No. 17 at 8. The Commissioner further argues that "the holding in Newton is limited to circumstances where the ALJ summarily rejects the opinions of a claimant's treating physician, based only on the testimony of a non-specialty medical expert who had not examined the claimant, and where the record does not contain 'competing first-hand medical evidence' that supports the ALJ's decision," circumstances that are not present in Travis's case. *Id.* at 9 (citing *Newton*, 209 F.3d at 458). The Commissioner further argues that Travis cannot show prejudice from the ALJ's rejection of Garnett's opinion, because the record does not support a finding of severe anxiety or depression, and therefore the ALJ would not have granted disability status even had he continued past step two. *Id.* at 5–10 (citing 214, 219, 224, 229, 234, 239, 245–246, 253, 258, 260, 263, 266, 325–329,

332, 334-335, 337, 340, 342, 345, 372, 389, 391, 394, 409–410, 417–418, 446, 448, 452–453, 470, 474, 479, 484, 490, 523, 528, 533, 538, 542–543, 547, 551–552, 589, 592, 596, 599, 602, 606, 651, 654, 658).

The undersigned is not convinced that *Newton* is as limited as the Commissioner argues. The Fifth Circuit has elsewhere stated:

> In *Newton v. Apfel*, this Court concluded that "absent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. § 404.1527(d)(2)."

*Kneeland v. Berryhill*, 850 F.3d 749, 760 (5th Cir. 2017); *see also Lee v. Colvin*, No. 5:15-CV-010-BG ECF, 2015 WL 7243793, at *3 (N.D. Tex. Oct. 23, 2015), *report and recommendation adopted*, No. 5:15-CV-010-C, 2015 WL 7196389 (N.D. Tex. Nov. 16, 2015) (remanding where the ALJ did not assign any weight to the opinions of a treating physician or perform an analysis under 20 C.F.R. § 404.1527). The court in *Kneeland* went on to note that the Social Security Administration's own "regulations make clear that opinions from examining physicians must be considered." 850 F.3d at 760 (citing 20 C.F.R. § 404.1527(c)(1)). There exists extensive case law on the propositions that the ALJ must give a treating physician's opinion great or controlling weight unless the ALJ shows good cause for doing otherwise, and that the ALJ cannot reject a medical opinion without explanation. *E.g. id.* at 759–60; *Greenspan*, 38 F.3d at 237; *Loza*, 219 F.3d at 395.

As the Commissioner concedes, the ALJ's opinion implicitly rejects Garnett's mental impairment opinion by not considering it when determining whether Travis's mental impairments were severe. ECF No. 17 at 8. The ALJ does not give any reason for doing so, let alone good cause, nor does he assign any weight to the opinion. Tr. 14–16. An ALJ's failure to address an examining

10

physician's medical opinion is harm, because "such an error makes it impossible to know whether the ALJ properly considered and weighed an opinion, which directly affects the RFC determination." *Kneeland*, 850 F.3d at 761–62. Both Travis and the Commissioner have pointed to parts of the record that support their arguments concerning Travis's disability status, but it is not this Court's task to reweigh the evidence in the record or substitute its judgment for the Commissioner's. *Hollis*, 837 F.2d at 1383; *Harris*, 209 F.3d at 417. Remand is therefore appropriate for the ALJ to consider and assign the proper weight to the opinions of Travis's treating physician regarding her mental condition.

## RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that United States District Judge Sidney A. Fitzwater **REVERSE** the Commissioner's decision and **REMAND** this action for further proceedings.

## NOTICE OF RIGHT TO OBJECT TO FINDINGS, CONCLUSIONS, AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's Findings, Conclusions, and Recommendation within fourteen (14) days after the party has been served with a copy of this document. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's Findings, Conclusions, and Recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file, by the date stated above, a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such factual findings and legal conclusions accepted by the United States

District Judge. *See Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby **ORDERED** that each party shall have until **June 25, 2018,** to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation. It is further **ORDERED** that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further **ORDERED** that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

Signed June 11, 2018.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE